UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CORNELIUS KENYATTA CRAIG, | ) | |
| | ) | |
| Petitioner, | ) | No. 6:19-CV-141-REW |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY KIZZIAH, Warden, | ) | OPINION & ORDER |
| | ) | |
| Respondent. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

*Pro se* habeas Petitioner Cornelius Craig alleges that the Bureau of Prisons ("BOP") imposed disciplinary sanctions, based on Craig's alleged stabbing of two inmates, without affording him procedural due process. DE 1. The Court conducts an initial review under 28 U.S.C. § 2243. For the following reasons, and under the applicable standards, the Court **DENIES** the petition.[1]

I. **BACKGROUND**

   a. **Generally**

---

[1] *See Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates *pro se* petitions under a more lenient standard. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) (noting that "allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)). However, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001). And, "under § 2243 it is the duty of the court to screen out frivolous applications[.]" Advisory Committee Notes to Rule 4, Rules Governing § 2254 Cases; *see also Neitzke v. Williams*, 109 S. Ct. 1827, 1831–32 (1989) (describing as "frivolous[,]" claims lacking "an arguable basis either in law or in fact").

Since 1999, Craig has been serving a combined 75+ year sentence for his role in a series of coordinated, armed carjackings in Alabama. *United States v. Craig*, No. 1:98-CR-99-KD-S-3 (S.D Ala. 1998); *United States v. Craig*, No. 1:98-CR-158-KD-M-2 (S.D Ala. 1998). During Craig's incarceration at USP McCreary, on December 7, 2017, a fight broke out between inmates affiliated with "St. Louis" and with the "South." DE 1-2 at 4–5 (Incident Reports). Prison officials alleged that Craig, during the altercation, stabbed two inmates, Douglas Simpson and Leon Jackson. *Id.* Simpson survived, but Jackson succumbed to his wounds soon after the stabbing. DE 7 at 5. Consequently, BOP charged Craig with Killing Any Person (a Disciplinary Code 100 offense) and Assaulting Any Person (a Disciplinary Code 101 offense). DE 1-2 at 2. Craig claims that the BOP denied him procedural due process in resolving those charges.

Chronologically, other events relevant to Craig's claims include:

-- December 8, 2017—Prison staff placed Craig in segregation on suspicion of killing another inmate. DE 8-1 at 1.

-- January 24, 2018—The investigating officer, BOP Lt. Robert Johnson, reviewed security camera footage of the incident and issued an incident report. DE 1-2 at 2. Per Johnson's report, delivered to Petitioner on the date issued, the video showed Craig walking across the prison unit, ascending a flight of stairs, and then stabbing Simpson and Jackson. *Id.* The same day, "the incident report was suspended . . . pending FBI referral for possible prosecution." DE 7 at 4; *see* DE 1-1 at 6.

-- September 17, 2018—The United States Attorney's office released the incident report for BOP processing. DE 7 at 4. The prison then redelivered the original report. DE 1-2 at 3.

-- October 4, 2018—A Disciplinary Hearing Officer ("DHO") ordered the incident report rewritten for two purposes: (1) "to clarify the sequence of events that led up to the incident along with explanation of time frames"; and (2) to clarify the particular victims that the charged assault and killing referenced. DE 7 at 4; *see* DE 1-1 at 6.

-- October 18, 2018—Lt. Johnson issued two incident reports separately charging Craig with the Jackson homicide and Simpson assault. DE 1-2 at 4–5.

-- October 22, 2018—Staff delivered the rewritten reports to Craig. *See id.*; DE 1-1 at 7.

-- October 31, 2018—A Unit Discipline Committee ("UDC") conducted an initial hearing on the revised charges. DE 1-1 at 7. Craig asked "Lt. Rowe," and Rowe agreed, to serve as Petitioner's staff representative. *Id.*

-- November 6, 2018—DHO Clint Hurley conducted a hearing on the charges. *Id.* at 7–8. Craig, with Lt. Rowe again assisting, appeared and denied both charges. *Id.* at 8. The DHO, as to both the assault and killing, ultimately concluded that "the act[s] [were] committed as charged." DE 7 at 3, 10. The DHO issued specific written findings as to both charges. *See id.* at 4–7, 10–12.

**b. Hearing Specifics & DHO Findings**

At the November 2018 proceeding, Craig, to the DHO, expressed concern about delays between the incident and the hearing. DE 7 at 2. The DHO "specifically addressed all time delays throughout the disciplinary process[.]" *Id.* In response to both charges, Craig stated "I'm not guilty. I didn't stab him." *Id.* at 2, 9. Craig inquired if the DHO had reviewed the incident footage. *Id.* at 2. The DHO explained that "the incident report was written based on Lt. Johnson's video review and subsequent investigation"; the DHO, thus, "saw no obvious reason" for further video review. *Id.* Craig offered no evidence other than his denial of involvement. *Id.* at 2, 9. In response to the DHO's inquiry regarding whether Craig had "any issues or additional requests with the disciplinary process[,]" Craig replied, "I just want all the stuff you got as evidence to be preserved. I'm going to need it if they prosecute the case. Some of it may be helpful." *Id.* The DHO considered Craig's testimony, medical records, witness statements, investigative reports, and photographic evidence, and, ultimately, concluded that Craig committed both charged offenses. *Id.* at 3, 10.

In reporting his findings as to the Code 100 "Killing" offense, DHO Hurley incorporated Lt. Johnson's rewritten report:

> On January 25, 2018, at 12:03 p.m., an SIS Investigation into the homicide of Leon Jackson, Reg. No. 40063-044, and the large scale fight between inmates affiliated with the "South" and "St. Louis", was concluded. During the investigation a review of the ViconNet recorded video was conducted. The review determined the fight started on the top tier of the A4 Housing Unit, at approximately 7:00 p.m. Inmate Cornelius Craig, Reg. No. 07125-003, responded from the opposite side of the unit

3

to the fight, which was in progress on the upper tier of the A4 housing unit, near cells 420-421. Craig was identified climbing the stairs and once he reached the top tier landing, he struck inmate Douglas Simpson, Reg. No. 43059-044, in the right side of his torso in a stabbing type motion and immediately turned and struck inmate Leon Jackson, Reg. No. 40063-044, in a stabbing type motion, one time in the upper left chest area, at approximately 7:05 p.m. No other inmate struck Jackson. After Jackson was stabbed, he (Jackson) exited the area by running down the tier towards the showers. Jackson began stumbling and falling down, and collapsed in front of the upper tier showers. Inmates Simpson and Jackson were transported to medical. Simpson was found to have received a pinpoint wound to his upper right quadrant. Jackson was noted to have fixed pupils, shallow agonal breaths, diminished lung sounds with respiratory wheezing and noted crackles and bradycardia with irregular rate. One pinpoint puncture wound was noted to the left side of his chest. Due to the severity of their wounds, Simpson and Jackson were transported to the outside hospital for further treatment. Upon arrival, Jackson was examined and pronounced deceased at 8:08 p.m. Simpson was treated and returned to the institution on December 8, 2017 at 01:30 a.m. The Provisional Report of Death issued by the Department of Public Health for the Commonwealth of Kentucky, listed the manner of death as Homicide caused by a stab wound to the left chest. It was determined inmate Cornelius Craig, Reg. No. 07125-003, caused the death of inmate Leon Jackson, Reg. No. 40063-044, by stabbing him once in the chest.

*Id.* at 4. While Craig denied any involvement in the incident, the DHO gave greater weight to the institution's proof. *Id.* at 5. The DHO relied on Lt. Johnson's report, which itself relied on video review, and noted the report's consistency with the medical evidence regarding Jackson's wound and cause of death. *Id.* at 5-6.

As to the Code 101 "Assaulting" charge, the DHO again incorporated Lt. Johnson's report:

On January 25, 2018, at 12:03 p.m., an SIS Investigation into the homicide of Leon Jackson, Reg. No, 40063-044, and the large scale fight between inmates affiliated with the "South" and "St. Louis", was concluded. During the investigation a review of the ViconNet recorded video was conducted. The review determined the fight started on the top tier of the A4 Housing Unit, at approximately 7:00 p.m. Inmate Cornelius Craig, Reg. No. 07125-003, responded from the opposite side of the unit to the fight, which was in progress on the upper tier of the A4 housing unit, near cells 420-421. At approximately 7:05 p.m., Craig was identified climbing the stairs and once he reached the top tier landing, he struck inmate Douglas Simpson, Reg. No. 43059-044, in the side of his torso in a stabbing type motion. No other inmates were identified striking inmate Simpson during the altercation. Inmate Simpson was transported to medical. Simpson was found to have received a pinpoint wound to his upper right quadrant. Simpson was transported to the outside hospital for

4

> further treatment. Simpson was treated and returned to the institution on December 8, 2017 at 01:30 a.m.

*Id.* at 11. The DHO, noting consistency with the medical proof, again found Johnson's report more compelling than Craig's assertion of innocence. *Id.* at 11.

Based on the dual guilt findings, the DHO imposed multiple sanctions including, in total: (A) disallowance of vested or non-vested 959 days of Good Conduct Time ("GCT"); (B) 270 days of administrative segregation; (C) 42-month suspensions of telephone and visiting privileges, as well as a 36-month suspension of commissary privileges; and (D) a $500 fine. *See id.* at 7, 12. BOP staff delivered the DHO's reports to Craig on November 15, 2018. *Id.* at 8, 13.[2]

### c. Craig's Claims

Now before this Court, Petitioner argues that BOP's handling of the subject charges violated his procedural due process rights. DE 1-1 at 16. Craig challenges his disciplinary convictions on several grounds, arguing that:

(1) Delays between the December 2017 incident and BOP's issuance of the January (original) and October (rewritten) 2018 incident reports prejudiced his defense (DE 1-1 at 17–22; DE 8);

(2) The DHO lacked authority to order rewriting of the incident report before a UDC hearing and referral (DE 1-1 at 22–24);

(3) The October 31, 2018, UDC hearing was not held within five days after the incident report was released for processing (*Id.* at 24–25);

(4) The BOP denied him a UDC hearing on Lt. Johnson's initial incident report and, thus, the opportunity to present evidence (*Id.* at 25);

(5) The BOP denied him access to documents relevant to his defense (DE 11); and

---

[2] Craig asserts that he appealed his disciplinary convictions to the BOP's regional and national offices, but that the BOP did not timely respond, permitting him to deem those administrative remedies exhausted. DE 1-1 at 9-15; DE 1-2 at 1. Craig further indicates that both the regional office and the central office rejected his appeals on procedural grounds but contends that he cured the defect that led to the regional office's initial rejection. *See* DE 1-2 at 1. Given the limited exhaustion record, the Court focuses its analysis on the merits of Craig's claims.

(5) The DHO failed to consider exculpatory evidence when he relied upon the investigating officer's summary of what the video footage showed instead of reviewing it himself (DE 1-1 at 26–28).

The Court, upon thorough review and for the following reasons, finds that Craig is plainly not entitled to relief.

## II. ANALYSIS

Before prison officials impose certain sanctions, *e.g.*, forfeiture of an inmate's good time credits, procedural due process requires that the institution provide: "1) written notice of the charges at least twenty-four hours in advance of the hearing; 2) a written decision explaining the evidence relied upon and the reasons for the disciplinary action; 3) an opportunity to call witnesses and present documentary evidence; and 4) the assistance of staff or a competent inmate when necessary." *Julick v. Snyder-Norris*, No. 16-6652, 2017 WL 5485453, at *1 (6th Cir. Mar. 1, 2017) (citing *Wolff v. McDonnell*, 94 S. Ct. 2963, 2978–80 (1974)). Finally, and to avoid "arbitrary deprivations" of good time, "some evidence in the record" must "support the [BOP's] conclusion[.]" *Superintendent v. Hill*, 105 S. Ct. 2768, 2774 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Further and foundationally, procedural due process is not a detached right. Rather, it links to otherwise protected interests, *i.e.*, "life, liberty, or property[.]" U.S. Const., Am. V; *see Manley v. Law*, 889 F.3d 885, 891 (7th Cir. 2018) ("Procedural due process protects only interests that are freestanding entitlements protected against injury or deprivation[.]"). Thus, to survive screening here, Craig must claim more than procedural missteps, he must present a non-frivolous claim that ties imposition of an "atypical and significant hardship [for] an inmate in relation to the ordinary incidents of prison life[,]" *i.e.*, a protected liberty interest, to an unconstitutional process. *Sandin*

*v. Conner*, 115 S. Ct. 2293, 2300 (1995). With these standards in mind, the Court turns to the petition.

*BOP Regulation Non-compliance*

Craig's first three grounds allege various procedural irregularities. All three claims are frivolous.

Initially, Craig points to 6-week (following the December 7, 2017, events) and 4-day delays (following the October 18, 2018, rewrite) in BOP's provision of Johnson's original and rewritten incident reports. DE 1-1 at 17–22. Craig, on these points and for several reasons, warrants to relief. By regulation, the BOP "ordinarily" delivers a report to the charged inmate within 24 hours of "staff becoming aware of" the subject's involvement in a triggering incident. 28 C.F.R. § 541.5(a).[3] Yet, the relevant reg does not **mandate** same-day delivery. *See id.* ("ordinarily"). The rule intrinsically contemplates the possibility that prison staff might need additional time to provide an inmate a report copy. In this case, the group altercation—including two stabbings and an inmate's

---

[3] The rewritten incident reports did not materially differ, as a notice matter, from the original. Both originally and as redrafted, Lt. Johnson reported that Craig stabbed two inmates and charged him with an assault and homicide. Further, Craig does not allege that any brief delay in BOP's provision of the report revisions prejudiced him in any way. *See Brennan v. United States*, 646 F. App'x 662, 666–67 (10th Cir. 2016) (applying harmless error review to *Wolff's* 24-hour, pre-hearing notice requirement).

death—surely necessitated an extended investigation (and likely caused a lengthy lockdown).[4] Thus, Craig failed to persuasively allege that BOP violated its regulation. *Mendoza v. Tamez*, 451 F. App'x 715, 717 (10th Cir. 2011); *Booth v. Patton*, No. 08-CV-02-HRW (E.D. Ky. 2008) (slip op. of June 10, 2009 at pp. 3-4).

Craig also claims irregularity in the DHO's rewrite directive, absent a prior UDC referral. DE 1-1 at 22–24. Petitioner contends that 28 C.F.R. § 541.8 and/or BOP Program Statement ("PS") 5270.09 state that a DHO "may not act on a case that has not been first referred by the UDC." DE 1-1 at 22–23.[5] This theory, too, is fatally flawed. Neither the regulation nor the PS contains the language Craig purports to quote. Instead, § 541.8 states that the DHO "will only conduct a *hearing* on the incident report if referred by the UDC." 28 C.F.R. § 541.8 (emphasis added); PS 5270.09, Ch. 5, § 541.8 (July 2011). The only DHO hearing that Craig identifies, from November 6, 2018, followed an October UDC referral. *See* DE 1-1 at 7–8. The post-referral hearing thus conformed to BOP regulations.

Craig further complains that the UDC did not hold a hearing on the charges within the applicable, per § 541.7(c), 5-day period. DE 1-1 at 24–25. This contention fares no better. The

---

[4] Craig also filed a supplemental claim regarding BOP's failure to timely provide him an administrative detention order. *See* DE 8 at 2–3. This claim fails for the same reasons that undercut Craig's contentions regarding delayed provision of incident reports. *See* 28 C.F.R. § 541.25 (detention order provided "ordinarily within 24 hours"). Further, as a procedural due process matter—the requirements of which, as further detailed later in this Opinion, are not dictated by agency regulation—Craig, himself, concedes that prison officials **notified** him of the basis for his detention on the same day he was placed in the Special Housing Unit ("SHU"). *See* DE 8 at 2 (Officials claimed "that the interrogation was based on him committing the killing of inmate Leon Jackson." (citing "Miranda Rights form dated 12-8-17")). Moreover, the basis for Craig's current "SHU" placement is the DHO's sanction under 28 C.F.R. § 541.24. *See* DE 7 at 7. Thus, Craig's current "disciplinary segregation status" (per 28 C.F.R. § 541.24) renders his prior "administrative segregation status" (per 28 C.F.R. § 541.25), at least as a habeas concern, moot.

[5] Further, BOP deems 100-level offenses, like Craig's, of the "Greatest Severity Level[.]" 28 C.F.R. § 541.3. Thus, UDC referral to a DHO is "automatic[.]" 28 C.F.R. § 541.7(a)(4).

8

applicable reg, with a familiar qualifier, indicates only that "the UDC will *ordinarily* review the incident report within five work days after it is issued[.]" 28 C.F.R. § 541.7(c) (emphasis added). Because the policy, itself, requires no strict adherence to the presumptive period, the 9-day period between incident reporting and the UDC hearing was not violative.

At bottom, as relevant to each of Craig's first three theories, BOP's failure to strictly track its regulations provides no basis for habeas relief. *See Sandin*, 115 S. Ct. at 2299 (Prison "regulations [are] not designed to confer rights on inmates[.]"). The Constitution, not agency regulations, sets procedural due process requirements. *See Cleveland Bd. of Educ. v. Loudermill*, 105 S. Ct. 1487, 1493 (1985). Thus, "[a]n agency's failure to adhere to its own policies or guidelines does not constitute a violation of due process." *Julick*, 2017 WL 5485453, at *2 (citing *Loudermill*, 105 S. Ct. at 1493–94, *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004)); *see also Wallace v. Federal Detention Ctr.*, 528 F. App'x 160, 162–63 (3d Cir. 2013). Per *Wolff*, due process, in prison disciplinary cases, requires 24-hour pre-hearing notice; it does not create temporal strictures on the timeline between triggering events, charge filing, or any hearing. Craig acknowledges that BOP provided him notice of the charges more than a week before any hearing. Due process, as to notice, requires no more. *See, e.g.*, *Whyte v. Snyder-Norris*, 2017 WL 4171133, at *1 (6th Cir. June 27, 2017) ("Whyte's disciplinary hearing took place on September 26, 2014, fifteen days after he received the notice—after the BOP's 'ordinary' timing for holding disciplinary hearings, 28 C.F.R. § 541.7(c), but well beyond the 24-hours' advance notice required by *Wolff*.").

*Evidentiary Issues*

Next, Craig contends he was denied an opportunity to present evidence at a UDC hearing, as 28 C.F.R. § 541.7(d)–(e) permits, on the initial incident report. DE 1-1 at 24–25. Yet, Craig

fails to identify any specific evidence that he intended to present or would have offered. And, at the subsequent DHO hearing, Craig gave only a blanket denial. Thus, the Court is dubious of Craig's present claims regarding UDC presentation. In any event and given charge gravity, any supposed evidence could not have impacted the outcome of a UDC hearing. The UDC-DHO referral was, for Craig's offenses, automatic. *See* 28 C.F.R. § 541.7(a)(4). Further, the UDC made no determination regarding Craig's guilt and imposed no sanctions. Petitioner had a full opportunity to offer any proof he deemed relevant at the DHO hearing (and prior to imposition of any sanctions). Thus, Craig shows no deprivation of any due-process-protected interest stemming from the alleged evidence-presentation denial. *See Wolff*, 94 S. Ct. 2975 (requiring constitutionally minimum procedures before "deprivation" of "right to good time").

Craig, with two supplemental filings, also complains that the BOP has refused to disclose portions of his "Central File" concerning the subject proceedings. DE 8 at 3; DE 11 at 2–4. Specifically, Craig references "memorandums approving investigations, excusing delays, and Miranda Rights form[s]." DE 11 at 3. The record shows that Craig requested a "Miranda Rights" form and a copy of his "lock-up order" on January 16, 2018. DE 8-1. Petitioner's claims regarding denial of these documents plainly show no procedural due process violation. First, Petitioner did not seek to present any documentary proof or raise any claim that such proof was needed during the at-issue DHO hearing. *See generally* DE 7. Thus, Craig's contentions do not, facially, show a violation of his right to "present documentary evidence in his defense[.]" *See Wolff*, 94 S. Ct. at 2979.

Further, Craig does not explain how either document would have been helpful to his defense, or, for that matter, relevant[6] to the charges.[7] *See id.* ("[A]n individual threatened with serious sanctions would normally be entitled to present witnesses and **relevant** documentary evidence[.]"); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 362 (7th Cir. 1992) (inmate properly denied evidence that "was not exculpatory"). A prisoner does not have an unalloyed due process right to documents prior to disciplinary proceedings. Rather, the analysis, as to documentary evidence, must also account for "the needs of the prison, and some amount of flexibility and accommodation is required." *Wolff*, 94 S. Ct. at 2980. Craig fails to tether any denial of the subject records to the liberty deprivations challenged in his petition. Thus, as to the "balance [of Craig's] interest in avoiding loss of good time against the needs of the prison," Petitioner, as to these records, offers nothing for his side of the scales. *Id.* at 2979–80. That is, denial of clearly non-exculpatory, irrelevant documents did not impact Craig's "interest in avoiding loss of good time[.]" *Id.* Consequently, the balance unequivocally tips to the institution and Craig's contentions plainly fall within "[p]rison officials . . . necessary discretion . . . to limit access . . . [to] documentary evidence." *Id.* In sum, BOP gave Craig an opportunity to present documentary evidence, and, even if Craig had pursued, and the DHO denied, submission of the *Miranda* form and detention order,

---

[6] *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *see also Mitchell v. Howard*, 419 F. App'x 810, 815 (10th Cir. 2011) (holding that a "DHO's failure to produce and review" a "legally irrelevant . . . work-crew log was not prejudicial to [petitioner], and the error, if any, was harmless."); *Evans v. Turner*, 54 F.3d 779 (7th Cir. 1995) (table) (concluding DHO's "properly denied" documentation "as [ ] irrelevant").

[7] As to the Miranda Rights form, the DHO did not rely on any incriminating Craig statements in reaching a guilt determination or imposing the challenged sanctions. Indeed, per the record, Craig "declined to make a statement without a lawyer present" during a post-incident interview. DE 7 at 6. The Court has already addressed the fatal flaws in Craig's contentions regarding delayed provision of the detention order. Further, the order itself reveals no information that was not included in the record before the DHO (and certainly nothing exculpatory). *See* DE 8-1 at 1.

exclusion of that plainly irrelevant proof would not have led to a deprivation of any protected interest without due process.

As to any other documents, Craig, from what this record shows, did not ask to review his file until May 2019. *See* DE 11-1 at 1. The BOP advised Craig in July that "[o]nce you arrive at your designated institution, your file will be readily available for your review." *Id.* at 2. Again, Craig did not attempt to introduce documentary proof at the DHO hearing. Craig simply fails to explain how a current access delay provides any basis for disturbing a disciplinary decision issued 6 months before he requested the subject documents. *See also Turk v. Wilson*, No. 6:11-cv-47, 2011 WL 2534224, at *3 (E.D. Ky. June 27, 2011) ("Turk alleges that by denying him access to various records he requested under the FOIA, the DOJ and the Trial Court violated his Fifth Amendment due process rights, which he alleges is an actionable claim. However, such a claim cannot be asserted in a § 2241 habeas proceeding[.]") (citing *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004)).

At bottom, as to all of the document-related contentions, Petitioner offers nothing to suggest that any lack of access rendered the DHO hearing or BOP procedure inconsistent with "any recognized principle of fundamental fairness." *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2320 (2009) (finding procedures "not inconsistent with the traditions and conscience of our people or with any recognized principle of fundamental fairness" constitutionally adequate (citations and quotation marks omitted)). Thus, Craig is plainly not entitled to relief on these claims.

Finally, Craig argues that the DHO failed to consider exculpatory evidence in relying on the Lt. Johnson's description of the altercation video rather than personally viewing the footage. DE 1-1 at 26–28. Petitioner states no viable due process claim on this basis. *Wolff* establishes that

prisoners must have an opportunity to present evidence, and the DHO gave Craig that chance. *See, e.g.*, DE 7 at 2. Craig, at the hearing and as to the video, asked the DHO if he had watched the footage. *See id.* Petitioner attempts to spin an alleged request for "video review"[8] as a denial of his right to put on proof. The Court is unconvinced. Craig does not claim that he requested the tape, or that the DHO rejected an attempt to offer it into evidence. *See also* DE 7 at 2, 9 (Craig "did not ask [Rowe] to review anything specific prior to the hearing."). At the hearing, Craig offered only his own testimony. In short, the fact that the DHO was allegedly unwilling to conduct an investigation that Craig did not, himself, undertake (or request an opportunity for same) does not amount to a denial of any due process right. *See Nerlich v. Quintana,* No. 12-CV-325-JMH, 2013 WL 875909, at *5 (E.D. Ky. Mar. 7, 2013) ("The Due Process Clause does not entitle [petitioner] to a formal investigation at all, let alone one that provides him with evidence to use to bolster his defense."), *aff'd* (Nov. 26, 2013).

Because the "[r]evocation of good time credits is not comparable to a criminal conviction," there is no due process requirement that a DHO consider all available evidence. *Hill*, 105 S. Ct. at 2774; *see Miles v. USP-Big Sandy*, No. 7:11-CV-00058-KSF, 2012 WL 1380274, at *3 (E.D. Ky. Apr. 20, 2012) ("The inquiry in cases like this is only whether there was 'some' evidence to support the guilty verdict, even if other evidence . . . may have been exculpatory in nature."). Instead, the DHO's decision must "have some basis in fact." *Id*. *Hill*'s "some evidence" standard is a lenient one, requiring only "a modicum of evidence" to support the outcome, and is met if the record contains *any* evidence that could support the DHO's decision. *Id.* at 2774–75.

On this basis, courts have repeatedly rejected claims essentially identical to Craig's theory:

---

[8] The Court notes, but does not rely on, the fact that Craig's representations on this point are contrary to Rowe's narrative regarding the subject events. *See id.* at 2, 9.

> [A] prison surveillance videotape allegedly containing exculpatory footage need not be presented at a hearing or reviewed by a disciplinary hearing officer in order to satisfy the "some evidence" standard needed to uphold a disciplinary conviction.

*Flanigan v. Wilson*, No. 10-cv-111-GFVT, 2011 WL 5024432, at *6 (E.D. Ky. Oct. 20, 2011) (citing *Campbell v. Holt*, 432 F. App'x 49, 51 (3d Cir. 2011) ("[T]he existence of alleged videotape surveillance footage that might have been helpful to Campbell's defense does not nullify the conclusion that the DHO decision was supported by 'some evidence.'"); *Davis v. Zuercher*, No. 08-CV-207-KKC, 2009 WL 585807, at *3 (E.D. Ky. Mar. 6, 2009) (collecting cases), *aff'd*, No. 09-5398 (6th Cir. Dec. 16, 2009); *Cruzen v. Haynes*, No. 1:06CV137, 2007 WL 3146383, at *3 (N.D. W.Va. Oct. 25, 2007); *Hadden v. Mukasey*, No. 07-CV-7909, 2008 WL 2332344, at *3 (S.D.N.Y. June 3, 2008)); *see also Neal v. Casterline*, 129 F. App'x 113, 115 (5th Cir. 2005) ("[Petitioner] has not shown that the DHO's refusal to review the videotape denied him due process[.]"); *Redmond v. Holland,* No. 15-cv-30-DLB, 2015 WL 4167809, at *6 (E.D. Ky. July 9, 2015) ("[A] prisoner's claim that a DHO failed to view a video tape, or that he did not do so at the point in time requested by a prisoner, simply does not rise to the level of a due process violation."). Here, Lt. Johnson's summary of the video footage was detailed, consistent with the medical records, and provides ample evidence to support the DHO's decision. Were this not enough, the surviving victim, Simpson, identified Craig as his (and Jackson's) assailant. *See* DE 7 at 6.

In sum, the DHO's determination was not arbitrary; the full process that BOP provided Craig before imposing the disputed sanctions included all *Wolff*-required safeguards, and Craig fails to state any non-frivolous due process claim.

For all these reasons, and under the applicable standards, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 1; and
2. The Court will enter a separate Judgment.

This the 27th day of December, 2019.

Signed By:
*Robert E. Wier*  /s/ REW
United States District Judge